Good morning, your honors. May it please the court. I do hope to reserve about five minutes for a rebuttal. All of the evidence in this case that was used against Mr. Brock at trial flows directly from the attachment of the GPS device by the Illinois deputies to his truck in Illinois. That allowed them to pinpoint the location of the warehouse in Sacramento. This happened after the U.S. Supreme Court had decided in Jones that the attachment of such a device and the use of its data constitutes a search under the Fourth Amendment. The government has argued that the Illinois state court order that was obtained to install the device is the functional equivalent of a search warrant, and we disagree with that for many reasons. We contested probable cause in the court below. More than that, there are traits that a warrant has that is not the same as this order. There's no particularity in it. This was the dragnet type of case that the U.S. Supreme Court had— Well, just a minute. We're talking about the warrant itself. It's got to satisfy three requirements, right? You can't argue it wasn't issued by a neutral, disinterested magistrate. And I understand you didn't argue about the warrant must describe things to be seized and place to be searched. So we were only on showing a probable cause, weren't we? I mean, there was a truck to be seized. It was right there. The appearance of the truck was in the warrant. The license plate number was there. The VIN number was described. And it said the truck will be used to further the offenses for cannabis trafficking and the unlawful delivery of cannabis. And that's correct, Your Honor. Well, I guess I don't understand why it doesn't describe then. I guess I'm back to probable cause. Is that where you're going? I actually am not as interested in probable cause, but I would like to respond to the Court's point, which is well taken. The order authorized purportedly, the probable cause was based on the vehicle's movements within three counties, Will, DuPage, and Cook. So if you're talking about that in that narrow sense, particularity, there was also no limit, though, on, for instance, if Mr. Brock went to a doctor's office. Or are we talking about the extent of the limit? Well, that becomes important for the jurisdictional issue, which — Well, I'm trying to ferret out your arguments for the warrant issue. If we're looking about the limits of the description, I think you don't have really great cases to help you. And I will accept that proposition. I will note we challenged in the court below the substantive probable cause of the information from source or sources. There was a discrepancy. Are you here to argue that? No. Okay. No. So I'm happy to move on.  Yes, and no. Public place? I mean, that's — Well, is — so if Your Honor has a driveway in a residential neighborhood, if that's a public place, could I then set up a little tent in Your Honor's driveway? And on the ground that it's a private place — a public place, excuse me, and I need a place to take a nap for a while. Well, but I guess we have to consider four factors, don't we? Isn't that what Duenas says? Yes. Duenas is our case. And, by the way, Jones is a case where I was on the dissent. So it's not necessarily a case I really like. But not that case as such, but we had a case up that was similar to it. But I'm not going there. I was overruled, and I willingly accept the Supreme Court's decision. All I'm saying is after Jones, Duenas came out of our court and said the curtilage is established by Fortes. Proximity of the area claimed to the house, whether the area is included within an enclosure, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation. Applying that, which is what Duenas makes me apply. I can't overrule Duenas. I think it's a public place. And for the purpose of this argument today, I'm happy to agree that under the existing Ninth Circuit precedent, that driveway is at least somewhat of a hybrid, depending on those four factors. Now, we requested an evidentiary hearing on our suppression motions. The district court did not grant that. That would not have been proper for us to get into a trial asking the officer, well, how far was the truck from the house? Because based on the photograph that was provided in the district court and in our appendix, coincidentally, that satellite captured a white truck right up against the house with the ‑‑ So, but in any event, the curtilage issue, we did dance around that a lot in district court. I think that under Jones, we're really looking at the truck being the private property. And so ‑‑ So the truck, wherever it is? Well, then we get into the language of the order about any public location from which it might be found. And it was found in his driveway. Which may or may not be a public location. But in any event, that leads us to the argument that the Illinois court order did not have any force or effect once that vehicle left Illinois. That is why we made our argument that Rule 41, Federal Rules of Criminal Procedure, the notes there, too, are very clear that in the case where such a tracking warrant is sought, that it should be a federal district court, which could then anticipate whether or not the vehicle might be traveling through different districts, in which case separate warrants would otherwise be necessary. And I understood your cite to the advisory committee note. But where is there a provision that says it's not valid once you leave the State of Illinois, other than an advisory note? Well, that's ‑‑ Your Honor, you're correct. That's not part of the advisory note in the Rule 41 scheme. However, I do recall reading somewhere that the boundary of a court's jurisdiction in issuing a warrant is based on the state of its issuance. And Illinois law, if I recall correctly, sets those bounds at the territorial limits. I don't know if that's quite responsive or not. But in any event, going back to the terms of the order, Will County, Cook County, and DuPage, not Sacramento County across the country. And I'm not sure what else. I have more to add to that. I feel that this is our primary issue. Would you agree with me then that as to it happening at night or monitoring after the state, we really look to Illinois law? Your Honor, this topic, I confess, has proven very confusing to me. And it was never ‑‑ Well, the only reason I ask it is because you seem to concede monitoring after the state was Illinois law. But I didn't see you conceded as to whether it could be done at night. Certainly. I'm having a tough time understanding why there's a difference. Okay, certainly. Because Illinois law allows it to be served any time you want to. Certainly. And I agree with that, diverting attention. But you didn't challenge the constitutionality of the Illinois law. No, we did not. We did not. However, since we are in a post‑Jones world, and I will refer to the ‑‑ I believe it's pronounced Jardine. I'm really not sure. But Florida versus U.S. Supreme Court 2013, even the dissenting opinion talking about the implied license paradigm states, acknowledges that, quote, nor as a general matter may a visitor come to the front door in the middle of the night without an express invitation. Citation from Idaho. Furtive intrusion late at night or in the pre‑dawn hours is not conduct that is expected from ordinary visitors. Indeed, if observed by a resident to the premises, it could be a cause for great alarm. So for many reasons, this was an unreasonable search. We maintain that it was a warrantless search. There is no good faith exception because the controlling law had been made relatively clear by Jones and the ‑‑ But the problem is, and this is the one that I really worry about for you, in order to argue warrantless, you've really got to succeed on every one of these ideas that, number one, the court ordered it, and yet it was not done right. Because it's warrantful. Certainly. And ‑‑ I mean, warrantless only comes if there isn't anything. Well ‑‑ And then, warrantful, you could have good faith to undo if it was a bad warrant, but my worry is that your argument is the warrant wasn't done right. Well, and thank you, Your Honor, and that reminds me of another point I wanted to make, which is that this order was issued on its own terms under the authority of Knotts and Carrow, the so‑called older Beeper cases. And so for that reason alone, it fails within its own terms because it references law that was no longer applicable. But if I look at Dahlia, it doesn't seem to me that regardless of the law upon which the warrant was issued, if it meets the three requirements, it's okay, even if I thought it was some law in 1822 that's been undone. It's a matter of satisfying the three requirements necessary to make it a valid warrant. Yes, and I understand that. However, with the so‑called Beeper cases, the whole rationale that those cases were decided on is different than what the opinions in Jones reaffirmed, that it's not, in terms of the reasonable expectation of property, whether a device was installed with the then owner's consent or not. So it's, in a sense, anachronistic to uphold this state court order here under the auspices of those prior cases, which are sharply called into question, if not implicitly overruled, by Jones. And the fact that the warrant cited to those cases doesn't in and of itself invalidate the warrant, does it? No, I wouldn't say in and of itself, but when you look at the rationales for those Supreme Court opinions versus the newer formulation in Jones and Jardinez, there is a difference, and it's a substantive difference. And I just have to go way back here. You had referenced Illinois law as determining the basis of going outside of that state. And I don't see in your briefing that you discussed Illinois law at all, or did I miss that? It may have been in the district court briefing. I believe that the case is Sutherland, but I'm not sure. And I would be happy to provide a supplemental briefing on that. But I would reserve my remaining minute if that's all right. All right, you bet. That's perfect. All right, Counselor, we'll hear you. Good morning, Your Honors. May it please the Court, Todd Pickles for the United States. With respect to the last issue the Court was addressing, well, the second to last issue with respect to whether or not the order was a warrant, as the Court has recognized all of the hallmarks of a warrant have been met, the absence of the word warrant. Could you keep your voice up, please? Sorry, Your Honor. The absence of the word warrant does not somehow invalidate what otherwise is a warrant. Turning to the jurisdictional limitations, the order itself at no point limits where the truck can be tracked. In fact, the reference to the counties comes from the affidavit in the application. Similarly, the citations to case law are in the application, not in the warrant itself. Turning next to the issue of the curtilage and the public place, the district court applied the done factors which proceeded and have continued to be applied post-Jones based on the facts that are presented to the district court by the defense, found that the driveway was not curtilage, and therefore there was no impermissible intrusion under the Fourth Amendment. What about the difference, or in your mind, the difference between curtilage and public place in the hypothetical posed by your colleague here about the tent in the driveway? Your Honor, whether or not someone may have a civil expectation or a trespass is something different than a Fourth Amendment intrusion, and I think that's the critical difference. In fact, in done in some of the other cases, the focus was, you know, in some of those cases law enforcement intruded upon private property and open field. It wasn't found to be a violation of the Fourth Amendment because under the analysis including post-Jones, that doesn't intrude upon what was traditionally considered under the Fourth Amendment, the home, the curtilage, and the effects. And therefore, the fact that the warrant referenced a public place doesn't somehow make the installation of the GPS device on the driveway impermissible under the Fourth Amendment, which is the way it was presented below and is before this Court. Finally, Your Honor, with respect to choice of law, I think the Court addressed that issue. This Court has yet to decide whether or not if there's a violation of state law that would necessarily lead to the exclusion of evidence under federal law. I believe other courts have found, however, and they're cited in our brief, that under the Fourth Amendment analysis, even if there's a violation of state law, it does not follow. Here I would note that with respect to the Sutherland case that was addressed by counsel, that was a rather unique situation in which the Illinois court issued a search warrant to search a vehicle that was known to the court to be located in Montana. And that is very different than what occurred here, where the Illinois court issued a warrant to track a vehicle located then in Illinois. Finally, Your Honor, with respect to Jardines, again, that focuses on intrusion and curtilage. Therefore, I would argue that it's inapplicable. Unless the Court has any other questions, I'm prepared to submit. Thank you, Your Honor. Thank you very much. I think you had a little bit of time left, so we'll let you go for it. Thank you, Your Honor. Yes, and it was actually the government did point out Sutherland at page 37 of their brief. But in any event, the impact of public-private and the truck itself, I think that with the implied license rationale of Jardines, Jardines, which we pointed out the California Supreme Court had somewhat anticipated in their 2000 case, People v. Camacho, is, first of all, the Fourth Amendment is always fact-intensive. Same with curtilage. And we, again, did not have an evidentiary hearing, so it was one thing for the court to theoretically apply these factors based on a residential driveway, but without hearing testimony about where the vehicle was, how far exactly from the street. We don't believe that the court really did pass on that issue in a meaningful fashion. And in terms of the intrusion that occurred when the device was attached, again, in Jardines, the 3.30 a.m. someone in your driveway putting something on your vehicle is an intrusion into your effect, your vehicle, which is plainly covered by the Fourth Amendment. And whether the order expressly spoke to the vehicle traveling beyond the state or not, I just don't see how there was jurisdiction to continue tracking that vehicle all the way out to California without some type of intervening, possibly, federal district court authorization. Thank you. You've exceeded your time by a minute, and so I think we'll submit the case. Thank you very much. So case United States v. Brock, 1410123, is here submitted. Thank you, counsel, very much for your arguments today. We very much appreciated you coming. And this court is now adjourned. Thank you.
judges: Gleason, Schroeder, Smith